UNITED STATES DISTRICT COURT  **For Online Publication Only**
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSE HERNANDEZ and MERCEDES
CONTRERAS,

                        Plaintiffs,  **MEMORANDUM AND ORDER**

 - against -  2:20-cv-1647 (JMA) (AYS)

BELLA NOTTE OF SYOSSET INC.,
RICHARD MULIERE, CARLOS COREAS,
and LETICIO ANTONIO MOLINA,

                     Defendants.
-------------------------------------------------------------X

FILED
CLERK

1:31 pm, Aug 31, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES**

**NEIL H. GREENBERG & ASSOCIATES, P.C.**
Attorneys for Plaintiffs
4242 Merrick Road
Massapequa, NY 11758
By:    Keith E. Williams, Esq.

**ANZALONE & LESCHINS**
Attorneys for Defendants Bella Notte of Syosset Inc. and Richard Muliere
950 Third Avenue
Suite 32nd Floor
New York, NY 10022
By:    Preston A. Leschins, Esq.

**RABINOWITZ & GALINA**
Attorneys for Defendant Carlos Coreas
94 Willis Avenue
Mineola, NY 11501
By:    Michael Marc Rabinowitz

**Leticio Antonio Molina***, pro se*
115 Irving Street
Central Islip, NY 11722

**AZRACK, District Judge:**

## INTRODUCTION

Plaintiffs Jose Hernandez ("Hernandez") and Mercedes Contreras ("Contreras," and with Hernandez, "Plaintiffs") brings this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL") against Defendants Bella Notte of Syosset, Inc. ("Bella Notte"), Richard Muliere ("Muliere"), Carlos Coreas ("Coreas"), and Leticio Antonio Molina ("Molina," and collectively "Defendants").

Presently before the Court is Plaintiffs' unopposed motion for summary judgment and motion for default judgment.  For the reasons stated below, Plaintiffs' motions for summary judgment and for default judgment are granted.

## BACKGROUND

The following facts are taken from Plaintiffs' unopposed Rule 56.1 Statement and its cited evidence.  (Pls. Rule 56.1 Statement ("Pl. 56.1") [DE 53-2]).

At all relevant times, Defendant Bella Notte was an Italian restaurant engaged in interstate commerce, grossing $585,315.28 in "sales made or business done" in 2017, $562,738.26 in 2018, and $538,764.32 in 2019.  (*Id.* ¶¶ 2–3, 7, 156–64, 172–75).  It did not have a time management system that allowed employees to punch in or out of their shifts – as such, "[t]ime records were not maintained for any" of Bella Notte employees.  (*Id.* ¶¶ 35–42).  Instead, Bella Notte "simply reported a predetermined number of hours to [its payroll system] for each day." (*Id.* ¶¶ 41–45). The New York State Department of Labor investigated Bella Notte for wage and hour practice violations in 2014 and in 2017.  (*Id.* ¶¶ 182–90).

Muliere (a 50% owner), Coreas (30%), and Molina (20%) operated Bella Notte on a day-to-day basis. (*Id.* ¶¶ 4, 10–17). Muliere, the President of Bella Notte, set employees' work schedules and oversaw their compensation (*Id.* ¶¶ 56, 58–65). Coreas, a Bella Notte officer and the head chef, supervised the kitchen staff and, with Muliere, hired and supervised Hernandez. (*Id.* ¶¶ 17, 91–95). Molina, a Bella Notte officer and a waiter, supervised the busboys and, with Muliere, hired and supervised Contreras. (*Id.* ¶¶ 17, 109–14).

Hernandez was an assistant cook at Bella Notte from roughly June 21, 2017 to October 9, 2019. (*Id.* ¶¶ 115–18). He worked six days a week for a total of fifty-three-and-a-half (53.5) hours: eight-and-a-half (8.5) hour shifts on Tuesdays, Wednesdays, and Thursdays; nine-and-a-half (9.5) hour shifts on Fridays and Saturdays; and nine (9) hour shifts on Sundays. (*Id.* ¶¶ 119–20). Hernandez did not take nor was given uninterrupted meal breaks of more than fifteen minutes. (*Id.* ¶ 121). During the first three months of his employment, Hernandez earned $11.50 per hour; during the remainder, $13 per hour. (*Id.* ¶¶ 123–24). Hernandez never received overtime pay. (*Id.* ¶ 129).

Contreras was a busboy at Bella Notte from July 2016 through March 1, 2020. (*Id.* ¶¶ 134–36). He worked six days a week, with each day beginning at 4:00 PM and, on Tuesdays, Wednesdays, and Thursdays ending at 10:30 PM; on Fridays and Saturdays at 11:30 PM; and on Sundays at 10:00 PM – although shifts could last longer if guests stayed past closing. (*Id.* ¶¶ 139–41). Contreras did not take nor was given uninterrupted meal breaks of more than fifteen minutes during his shifts. (*Id.*

¶ 142).  Bella Notte paid Contreras $170 cash per week from July 2016 to January 2017, $200 cash per week from January 2017 to January 2018, and $280 cash per week from January 2018 to February 2019.  (*Id.* ¶¶ 144–46).  In February 2019, his pay switched from weekly to hourly; he earned $10.50 per hour from February 5, 2019 to May 2019 and then $11.10 per hour from May 2019 to June 2019; Contreras was paid by check during these times.  (*Id.* ¶¶ 147–48).  His pay switched back to weekly in June 2019, earning $240 cash per week from June 2019 to March 2020.  (*Id.* ¶ 149).

Plaintiffs' initial complaint, filed April 1, 2020, named only Bella Notte and Muliere as Defendants.  [DE 1].  These two defendants answered on June 2, 2020.  [DE 9].  During discovery, then-nonparties Coreas and Molina failed to appear for that deposition despite communicating with Muliere and his counsel.  (*See* Notices of Deposition, Ex. H [DE 53-11] to Declaration of Keith E. Williams ("Williams Decl.") [DE 53-3]).  On June 6, 2021, Plaintiffs amended their Complaint, adding Coreas and Molina as defendants.  [DE 26].  After they failed to answer, the Clerk of Court entered Certificates of Default against Coreas and Molina on August 11 and August 16, 2021, respectively.  [DEs 35, 40].  Molina and Coreas, appearing pro se, first filed letters with the Court on September 24, and September 27.  They subsequently filed additional submissions, which are discussed infra.  Molina has continued to proceed pro se and has filed an answer to the Amended Complaint without leave of the Court.  [DE 51].  Coreas eventually retained counsel and requests that the Certificate of Default against him be vacated.  [DE 55].

## DISCUSSION

The Court first addresses Plaintiffs' motion for summary judgment against Bella Notte and Muliere.  The Court then addresses Plaintiffs' motion for default judgment against Molina and Coreas.

## I.     Motion for Summary Judgment

The Court begins by laying out the (A) legal standard applied to motions for summary judgment.  The Court then examines (B) whether Bella Notte and Muliere are liable as Plaintiffs' "employers" under the FLSA and NYLL, (C) whether Plaintiffs are "covered employees" under the FLSA and NYLL, (D) whether, and to what extent, Bella Notte and Muliere are liable to Hernandez for overtime wage violations, (E) whether, and to what extent, Bella Notte and Muliere are liable to Contreras for minimum wage violations, (F) whether, and to what extent, Bella Notte and Muliere owe Hernandez and Contreras damages for wage notice and wage statement violations, (G) whether, and to what extent, Bella Notte and Muliere owe Hernandez and Contreras liquidated damages, (H) whether any award is subject to pre- or post-judgment interest, (I) the fifteen percent penalty applied to unpaid judgments under the NYLL, and (J) attorneys' fees and costs.

### A.     Legal Standard

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252),

because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### B.   Bella Notte and Muliere's Employer Liability under the FLSA and NYLL

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under the NYLL, an "employer" is "any person . . . employing any individual in any occupation industry, trade, business or service." NYLL § 190(3). Courts interpret the two definitions "coextensively." *Nana v. Le Viking LLC*, 2018 WL 1413264, at *4 (S.D.N.Y. Mar. 2, 2018) (quoting *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014)). With "little [statutory] guidance on whether a given individual is

or is not an employer," courts apply the "economic reality" test, which focuses on "whether the alleged employer (1) had the power to hire and fire [an] employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013). Like enterprises, an individual owner is also an "employer," if he or she "exercises a sufficient level of operational control in [a] company's employment of employees," as determined by "the same factors that apply to corporations," *i.e.*, the economic realities test. *Khurana v. JMP USA, Inc.*, 2017 WL 1251102, at *9 (E.D.N.Y. Apr. 5, 2017) (citing *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013) and *Gillian v. Starjam Rest. Corp.*, 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011)).

The record is replete with undisputed evidence that Bella Notte and Muliere employed Plaintiffs. Muliere, through Bella Notte, hired Plaintiffs, in part supervised and controlled Plaintiffs' work schedules and duties, set Plaintiffs' rate and method of payment, and exercised their discretion to maintain employment records as they saw fit. The economic realities test is clearly met. Bella Notte and Muliere are Plaintiffs' "employers" under the FLSA and NYLL.

## C.   Bella Notte and Muliere's Coverage under the FLSA and NYLL

Having determined Bella Notte and Muliere were Plaintiffs' "employers," the next step to Plaintiffs' recovery of minimum and overtime wages is, under the FLSA, showing Bella Notte and Muliere "engaged in [interstate] commerce [and] gross at least $500,000 in annual sales" during Plaintiffs' employment. *Solano v. Andiamo*

*Cafe Corp.*, 2020 WL 6746052, at *3 (S.D.N.Y. Nov. 17, 2020) (citing 29 U.S.C. §§ 203(s)(1)(A)(ii), 206, 207).  The NYLL coverage analysis "substantively mirrors . . . that under the FSLA, although the NYLL does not require that the employer's business had a minimum amount of sales nor a nexus to interstate commerce." *Id.* at *4 (citing *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *2 n.2 (S.D.N.Y. Sept. 16, 2014)).

The uncontested evidence reflects that Bella Notte utilized a number of materials tracing to interstate commerce in preparing and serving its meals.  Pl. 56.1 ¶¶ 158–64 (clams, calamari, muscles, Lipton Tea, Earl Grey Tea, Pepsi, Coca Cola, Ketel One, Grey Goose, Stolichnaya, Jack Daniels, Wild Turkey, kitchen equipment). It also demonstrates, through Bella Notte records, sales in excess of $500,000 in each of 2017, 2018, and 2019.  *Id.* ¶¶ 165–75.  Specifically, Muliere testified that he kept yearly calendar books in which he listed total gross sales for each week and that adding up each week's figures would amount to the total sales for the year.  Tr. of Deposition of Richard Muliere at 156:19–157:14, 200:5–201:22, Ex. G [DE 53-10] to Williams Decl.; *see* Calendars for 2017, 2018, and 2019, Exs. AA, AB, and AC [DEs 53-30 to -32] to Williams Decl.  Plaintiffs' Exhibit AI, [DE 53-38], collects these figures and tallies them up by year; in each of 2017, 2018, and 2019, Bella Notte cleared the $500,000.00 threshold.

### D.    FLSA and NYLL Overtime Violations as to Hernandez

The FLSA and NYLL both require employers to pay employees one-and-a-half times his or her regular rate of pay for all hours worked in excess of forty hours per

week.   29 U.S.C. § 207(a)(1); 12 NYCRR § 146-1.4. "In determining whether" a plaintiff received statutory overtime pay, the Court "start[s] with the premise that the employer is obligated to maintain records of wages and hours." *Nana*, 2018 WL 1413264, at *5 (quoting *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008)); *see* 29 U.S.C. § 211(c); 12 N.Y.C.R.R. § 146-2.1. Where an employer fails to keep adequate records, an employee "may rely on his own recollection" which, if done, flips the burden onto the  employer to "proffer evidence sufficient to rebut that recollection." *Nana*, 2018 WL 1413264, at *5; *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), *superseded by statute*, Portal–to–Portal Act of 1947, 29 U.S.C. § 216(b) (2006), *as recognized in Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 590 (2d Cir. 2007).

In the absence of adequate records, Pl. 56.1 ¶¶ 38–51, Hernandez's recollection meets his evidentiary burden as to overtime pay.  As averred, Hernandez "worked at least fifty-three and one-half (53.5) hours a week," and the thirteen-and-one-half hours above the forty-hour threshold were not compensated at one-and-a-half times Hernandez's regular rate of pay.   *Id.*  ¶¶ 122–29 (citing Declaration of Jose Hernandez, Ex. AE [DE 53-34] to Williams Decl.).  Pursuant to their failure to contest Plaintiffs' motion, Bella Notte and Muliere proffer no evidence to rebut Hernandez's recollection.  As calculated in Hernandez's undisputed damages chart, Bella Notte and Muliere owe him $10,086.31 in uncompensated overtime pay.  Ex. AG [DE 53-36] to Williams Decl.

### E.    FLSA and NYLL Minimum Wage Violations as to Contreras

The FLSA and NYLL set a statutory hourly-rate floor above which every employer must compensate employees.   29 U.S.C. § 206(a); NYLL § 652.   At all relevant times, the federal minimum wage was $7.25 per hour.   The relevant state minimum wage changed each year from 2016 and 2020.   12 NYCRR § 146-1.2(a)(1)(ii). "[T]o state a FLSA minimum wage a plaintiff must prove that . . . the total amount he or she was paid divided by the number of hours he or she worked was less than" the federal statutory rate, and "to state a NYLL minimum wage claim, a plaintiff must show that his or her average hourly pay was less than the applicable [state] minimum wage at the time." *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 302 (S.D.N.Y. 2019).   Contreras attests that he worked forty hours per week during his employment.   Pl. 56.1 ¶¶ 140–43; *see also id.* ¶¶ 144–49 (reciting Contreras' earning by year as set forth in the Declaration of Mercedes Contreras, Ex. AF [DE 53-35] to Williams Decl.).

In 2016, Contreras earned $170 per week, *i.e.*, $4.25 per hour.   That is, he earned less than both the federal minimum wage and the $9.00-per-hour state minimum wage.   In 2017, Contreras earned $200 per week, *i.e.*, $5.00 per hour – again, earning less than both the federal minimum wage and the $10.00-per-hour state minimum wage.   In 2018, Contreras earned $280 per week, *i.e.*, $7.00 per hour – which kept his earning below the federal minimum wage and the $11.00-per-hour state rate.

During the first five weeks of 2019, he earned $280 per week, *i.e.*, $7.00 per hour, which was less than the federal and state ($12.00-per-hour) floors.  Between February 6, 2019 through May 7, 2019, his compensation switched to an hourly rate—specifically $10.50 per hour—meaning he earned above the federal minimum wage but below the state minimum wage.  Between May 8, 2019 through June 11, 2019, his pay increased to $11.10 per hour – still above the federal amount and below the state amount.  On June 12, 2019, his compensation switched back to a weekly rate for the rest of the year—$240 per week, *i.e.*, $6.00 per hour—which is less than both the federal and state wage rates.  In 2020, Contreras' earnings remained at $240 per week, *i.e.*, $6.00 per hour, which was less than the federal rate and the updated state rate of $13.00 per hour.

Defendants have not rebutted Contreras's evidence on these points. Accordingly, they owe Contreras actual damages arising from minimum wage violations.

However, the Court does not accept the figure in Contreras's damages chart. *See* Ex. AH [DE 53-37] to Williams Decl.  The chart, like his motion, mistakenly calculates Contreras's damages as if he was paid hourly for part of 2018, *id.*; Pl. Mem. at 27, instead of part of 2019 as he averred and as his 2019 ADP Earnings Report reflect, *see* Pl. 56.1 ¶¶ 146–48; Contreras 2019 ADP Earnings Report, Ex. Z [DE 53-29] to Williams Decl.  The distinction is important considering the state minimum wage was higher in 2019 than in 2018.  Based on Contreras's declaration and the

2019 ADP Earnings Report, the Court has calculated that Defendants owe Contreras $34,098.19 for their FLSA and NYLL minimum wage violations.

## F.    NYLL Wage Notice and Wage Statement Violations

The NYLL requires employers to provide wage notices to each employee hired after April 9, 2011 and to provide each employee with accurate wage statements each time wages are paid.  NYLL §§ 195(1)(a) & (3).  Should an employer fail to do so, the employee may recover, in the case of a notice violation, $50 per work day and, in the case of a unprovided statement, $250 per work day – neither of which is to exceed $5,000 total.  *Id.* §§ 198(1-b), (1-d).

Hernandez and Contreras each aver in his declaration that neither Bella Notte nor Muliere provided him wage notices at the time of hiring or any time thereafter.  Pl. 56.1 ¶¶ 47–49 (citing declarations).  Nor did Bella Notte or Muliere provide accurate wage statements, in that the statements failed to list the total number of hours worked per week or the proper compensation amount.  *Id.* ¶¶ 50–51 (same).

As set forth in the undisputed evidence, Bella Notte and Muliere's violations were so frequent and never remedied that they owe both Hernandez and Contreras the statutory maximum for both notice and statement violations.  *See* Exs. AG–AH to Williams Decl.  Spelled out, Bella Notte and Muliere owe Hernandez $5,000 for the notice violations and $5,000 for the statement violations – for a total of $10,000.  Likewise, they owe Contreras $5,000 for the notice violations and $5,000 for the statement violations – for a total of $10,000.

### G.     FLSA and NYLL Liquidated Damages

The FLSA and NYLL provide for liquidated damages in an "additional equal amount" to that owed for unpaid wages unless the employer has "a good faith basis for believing that its underpayment of wages was in compliance with the law."  29 U.S.C. §§ 216(b), 260; NYLL § 198(1-a).  "Good faith" under FLSA— which "'does not appreciably differ' from" that of the NYLL—exists where the employer took "active steps to ascertain the dictates of the [law] and then act[ed] to comply with them."  *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (internal quotation marks omitted); *Solano*, 2020 WL 6746052, at *6 (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)).  "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  That said, a plaintiff may recover liquidated damages under only one of the FLSA and NYLL, not both.  *Rana v. Islam*, 887 F.3d 118, 122–23 (2d Cir. 2018).

Plaintiffs' motion is unopposed and, therefore, Bella Notte and Muliere have not asserted any good faith basis for the underpayment of wages.  There is also affirmative evidence in the record disproving their good faith: Muliere's failure to apprise himself of his FLSA and NYLL obligations despite the New York State Department of Labor's investigations.  Pl. 56.1 ¶¶ 182–84.  At Plaintiffs' request, the Court grants them liquidated damages solely under the NYLL.  Hernandez shall

receive $10,086.31 in liquidated damages. Contreras's award shall equate to his minimum wage awards, which, as above, is $34,098.19.

### H.   Pre- and Post-Judgment Interest

New York law entitles Plaintiffs to pre-judgment interest on unpaid wages at a rate of nine percent per year, starting from a "reasonable intermediate date" determined at the Court's discretion. NY CPLR 5001(b), 5004. As Plaintiffs' case law rightfully suggests, a reasonable intermediate date is the midpoint of the terms of each Plaintiff's employment. *E.g.*, *Solano*, 2020 WL 6746052, at *7. Plaintiffs' actual damages shall be the basis from which interest shall be calculated, not the liquated damages nor the wage notice and wage statement award. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017). Moreover, pre-judgment "interest is calculated using the simple rate, not a compounded rate." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015).

For Hernandez, who worked at Bella Notte from June 21, 2017 to October 9, 2019, pre-judgment interest shall accrue from August 15, 2018 – his prejudgment interest award is therefore $2,763.25. For Contreras, who worked from July 1, 2016 to March 1, 2020, pre-judgment interest shall accrue from May 1, 2018 – his prejudgment interest award is therefore $10,231.50.

Pursuant to 28 U.S.C. § 1961(a), post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Such interest "is mandatory in any civil case where money damages are recovered," *Duffy v. Oyster*

*Bay Indus., Inc.*, 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), and is awarded at the statutorily prescribed federal rate, *see* 28 U.S.C. § 1961.

## I.    NYLL Fifteen Percent Penalty

As required of any court issuing an "order awarding [NYLL] remedies," the Court makes clear that which is required by NYLL § 198: "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL §§ 198(4), 663(4); *e.g.*, *Martinez v. Dannys Athens Diner Inc.*, 2017 WL 6335908, at *6 (S.D.N.Y. Dec. 5, 2017) (Sullivan, J.).

## J.    Attorneys' Fees and Costs

Both the FLSA and NYLL entitle successful plaintiffs, such as Hernandez and Contreras here, to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); NYLL §§ 198(1-b) & (1-d).  Plaintiffs will have the opportunity to move for attorneys' fees and costs after the Court enters judgment on Plaintiff's substantive claims.  *See* Fed. R. Civ. P. 54(d)(2)(b) (party permitted to move for attorney's fees and costs within 14 days of the entry of judgment).

## II.   Motion for Default Judgment

Plaintiffs filed their Amended Complaint on July 6, 2021.  [DE 26].  Coreas was served with the Amended Complaint on July 10, 2021 and Molina was served on July 20, 2021.  After Coreas and Molina failed to answer, the Clerk of Court entered Certificates of Default against them on August 11, 2021 and August 16, 2021,

respectively.[1]  [DEs 35, 36].  On September 24, 2021, Molina appeared and requested

an extension of time to file his answer.  [DE 46].  Three days later, on September 27,

2021 Coreas appeared and requested time to seek legal assistance, [DE 45].  On

October 22, 2021, Molina filed, without leave, his answer to the Amended Complaint,

notwithstanding the previously entered certificate of default.  [DE 51].  On December

14, 2021, counsel for Coreas appeared and filed a letter requesting the court to vacate

the Certificate of Default against his client.  [DE 55].  Plaintiffs oppose this motion

to vacate the certificate of default.  On March 4, 2022, Molina filed letters with the

Court indicating that he was proceeding *pro se*.  [DEs 59–60].

### A.    Motion to Vacate the Certificates of Default

The first matter of business concerns whether the Court should vacate the

Certificates of Default against Coreas and Molina, which are still in effect on the

docket.

District courts may set aside the entry of default for "good cause."  Fed. R Civ.

Pro. 55(c).  Three factors guide the "good cause" analysis: "(1) whether the default

was willful; (2) whether setting aside the default would prejudice the adversary; and

(3) whether a meritorious defense is presented."  *Baxter v. Bradley*, 2022 WL

1315629, at *1 (2d Cir. May 3, 2022) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d

90, 96 (2d Cir. 1993)).  Relief "under Rule 55(c) [is] left to the sound discretion of a

district court because it is in the best position to assess the individual circumstances

---

[1]  Although not required to do so, Plaintiffs also mailed copies of their requests for
certificates of default to both Coreas and Molina and the certificate of default issued
by the Clerk of Court to Coreas.

of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp.*, 10 F.3d at 95.

### 1.   Willfulness

There is evidence in the record that Coreas and Molina's default was willful. "'Willfulness,' in the context of a default . . . refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). "If a defendant 'does not deny that he received the complaint, the court's orders, . . . or that he never answered the complaint,' and 'does not contend that his non-compliance was due to circumstances beyond his control,' a court can infer willfulness." *Carrasco v. Acropol Rest. Corp.*, 2019 WL 2325556, at *2 (S.D.N.Y. May 31, 2019) (quoting *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)).

Even before being named a defendant, Molina refused to participate in the lawsuit by scheduling, yet failing to appear for, his deposition twice. *See* Exs. C–D [DEs 47-4 to -5] to Pls. Letter dated September 27, 2021 ("Sept. 27, 2021 Letter") [DE 47]. Coreas too failed to appear at his deposition. Their non-appearance cannot be presumed negligent or careless considering, at that time—*i.e.*, one month before being named defendants—they were communicating with Muliere, his counsel, and Plaintiffs' counsel. Ex. B [DE 47-3] to Sept. 27, 2021 Letter. Plaintiffs' counsel even advised them to retain a lawyer, advice that neither Coreas nor Molina took in a timely fashion. *Durso v. Mod. Food Ctr., Inc.*, 2019 WL 2150424, at *5 (S.D.N.Y. May 17, 2019) (willfulness can depend on "whether the defendant had actual notice of the

action, and whether the defendant knew that the plaintiff had a claim against them" (internal quotation marks omitted)).

A court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained. *McNulty*, 137 F.3d at 738. Molina's three letters offer no explanation for his conduct. While Coreas offers an explanation, it does not satisfy the Court. Coreas concedes his nonparticipation was no accident. Rather, he admits he "unaware of the consequences of this matter" and "did not understand the seriousness of this matter." *See* Coreas Letter dated December 14, 2021 ("Coreas Ltr.") [DE 55]. Coreas blames this on his nonproficiency in English, but the point is unpersuasive. His alleged nonproficiency did not stop him from reaching out to Plaintiffs' counsel and Muliere's counsel before being sued. He cannot simultaneously have been concerned enough to separately contact each party's attorney but too ignorant of the consequences, especially when, upon speaking with Plaintiffs' counsel, he was advised to retain his own counsel. Coreas' conduct was not simply careless.

The willfulness factor favors Plaintiffs.

### 2.    **Prejudice to Plaintiffs**

In assessing prejudice, "the Court may consider whether 'the delay occasioned by vacatur would thwart plaintiff's recovery or remedy.'" *Windward Bora LLC v. Armstrong*, 2021 WL 606713, at *4 (E.D.N.Y. Feb. 16, 2021) (quoting *PMJ Cap. Corp. v. Bauco*, 333 F.R.D. 309, 313 (S.D.N.Y. 2019)). At the outset, the Court notes that Molina and Coreas fail to address the issue of prejudice in their submissions despite

bearing the burden on the issue.  *Capitol Recs. v. Defries*, 2012 WL 3041583, at *6 (S.D.N.Y. July 20, 2012).

Vacating the Certificates of Default would prejudice on Plaintiffs.  Doing so would delay, if not prevent, the recovery to which Plaintiffs are entitled from Bella Notte and Muliere, considering Coreas and Molina's defenses would require re-litigation of issues decided in the summary judgment analysis above.  It would essentially require Plaintiffs to re-litigate their case, *e.g.*, repeating the discovery process (now closed) and rebriefing summary judgment arguments already addressed.  By way of example, Coreas seeks to vet the evidentiary record through "accountant testimony," without acknowledging that Plaintiffs have already done so. *Compare* Coreas Ltr. at 2, *with* Tr. of Deposition of Mark Pechansky (deposition testimony of Bella Notte's accountant), Ex. I to Williams Decl. [DE 53-12].  And Plaintiffs efforts (until summary judgment) were tested in the adversarial system, in that Bella Notte and Muliere defended all aspects of the proceedings through counsel.

Plaintiffs have already developed the merits of their case, and "[a]llowing [Molina and Coreas] to reopen litigation . . . would only unnecessarily add to [Plaintiffs'] expenses." *Directv, Inc. v. Rosenberg*, 2004 WL 345523, at *4 (S.D.N.Y. Feb. 24, 2004).  The prejudice factor favors Plaintiffs.

### 3.   Meritorious Defense

The "meritorious defense" factor does not require a defendant to "establish his defense conclusively," but instead asks for evidence that, "if proven at trial, would

constitute a complete defense." *McNulty*, 137 F.3d at 740 (internal quotation marks and citations omitted).

Coreas does not cite evidence of any meritorious defenses.  Instead, Coreas' letter simply argues that he may have certain  "viable defense[s]."  As proof of one, he cites the summary judgment submissions inclusion of "payroll records" and "checks . . . issued for payroll purposes."  Coreas Ltr at 2.  Rather than support his cause, however, such records defeat it.  *See supra*.

Coreas also argues, without evidence, that Bella Notte "was never busy and may not have met the [$500,000] threshold" and asks to take discovery to that end. Coreas Ltr. at 2.  But the evidentiary record, as already analyzed, short-circuits that argument.  To the extent that Coreas contends such evidence "needs to be vetted by records and accountants testimony, the evidence submitted by Plaintiffs reflects that is already has been.  *See* Exhibits I, W, X, Y, Z to the Williams Declaration [DEs 53-26 to -29]; *see also* Tr. of Deposition of Mark Pechansky.

Coreas also asserts a purported jurisdictional defense premised upon the $500,000 threshold for FLSA claims.  Coreas Ltr. at 2.  However, the $500,000 threshold is not a jurisdictional defense. "Virtually all of the circuit courts," including the Second Circuit, "and those district courts in the Second Circuit that have explicitly considered whether the FLSA's $500,000 requirement is jurisdictional agree that it is a requirement that goes to the merits of a claim and is not jurisdictional." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 550 (S.D.N.Y. 2017); *see Quito v. Zheng*, 710 Fed. App'x 28 (2d Cir. 2018); *see also* Order

dated July 7, 2021; Order dated August 10, 2021. Moreover, as explained above, the evidence in the record establishes that the $500,000 threshold has been met and Coreas has submitted no evidence to the contrary. Accordingly, this argument does not constitute a meritorious defense.[2]

Molina and Coreas seem to defend against liability on the basis that were not owners. *See, e.g.*, Answer ¶ 11 [DE 51]; Coreas Ltr at 1. Such conclusory assertions are not credible in light of their own filings and the documentary evidence already in the record. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) ("[A] defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense"). Molina's Answer claims that "[t]he only owner of Bella Notte is Richard Muliere" but also attaches a Form 1120-S, Schedule K-1, which indicates that Molina was a 20% shareholder. *Compare* Answer ¶ 11, *with* Ex. A to Answer. Coreas concedes he was a minority shareholder, and Plaintiffs' evidence reflects owned 30% of the total shares of Bella Notte. Coreas Ltr. at 1. Both Molina and Coreas assert they relied on Muliere to "maintain payroll records and to properly compensate the employees." *Id.*; *see* Answer ¶ 47. But "mere[ly] assert[ing] that there are several issues of fact barring summary judgment does not by itself constitute a meritorious defense," *United Overseas Bank v. Marchand*, 1996 WL

---

[2] Even assuming <u>arguendo</u> that Coreas might have a meritorious defense on the $500,000 threshold for Plaintiffs' FLSA claims, Coreas would still not have any meritorious defense on the NYLL claims and Plaintiffs would receive the same damages on their NYLL claims alone. Moreover, even if Plaintiffs did not have viable FLSA claims, the Court would exercise supplemental jurisdiction over the NYLL claims.

695902, at *8 (S.D.N.Y. Dec. 4, 1996) (internal quotation marks omitted)).  This is especially true here, where multiple sources of evidence indicate that:

> (i) Coreas hired employees, trained and supervised them, and managed their hours, Hernandez Decl. ¶¶ 32–36; Muliere Tr. at 83:16–25; Tr. of Deposition of Angel Galvez at 13:10–14:8, 16:12–15; 18:9–20, 36:14–19, Ex. N [DE 53-17] to Williams Decl.; Tr. of Deposition of Irsan Reyes at 14:14–15:16, Ex. O [DE 53-18] to Williams Decl., and

> (ii) Molina hired Contreras, trained and supervised him, and set his work hours, Contreras Decl. 34–39.

Moreover, neither Coreas nor Molina—who both worked at the restaurant—have submitted a sworn affidavit attesting to any relevant facts in support of their claims that they have meritorious defenses.  The absence of any such evidence undermines their arguments that they have meritorious defenses.  *See New York v. Green*, 420 F.3d 99, 109–10 (2d Cir. 2005) ("Defendants failed to submit to the District Court even a single affidavit or any other evidence supporting their asserted defenses.  The District Court, therefore, rightly concluded that Defendants' assertions amounted to little more than conclusory denials," such "that Defendants failed to raise a meritorious defense.").

The meritorious defense factor favors Plaintiffs.  As all three factors favor Plaintiffs, the Court will not vacate the Certificates of Default.

## B      Default Judgment

Granting a default judgment pursuant to Federal Rule of Civil Procedure 55 is a two-step process.  *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011).  The moving party must first have the Clerk of Court enter a certificate of default against the defaulting party.  *See* Fed. R. Civ. P. 55(a). Only thereafter may the

moving party file a motion for default judgment. *Id.* In analyzing the motion, courts accept as true all well-pleaded factual allegations in the operative complaint. *E.g.*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation other than one relating to the amount of damages is admitted if a responsive pleading is required and the allegation is not denied."). That said, "a party is not entitled to default judgment as a matter of right," *Allstate Ins. Co. v. Howell*, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013); rather, "the court has the responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief," *Ferrara v. Tire Shop Ctr.*, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015).

The analysis in Discussion Section I already established Plaintiffs' entitlement to FLSA and NYLL damages against their employers; accordingly, the only remaining issue on this default judgment is whether Coreas and Molina are statutory "employers." Application of the "economic realities" test demonstrates that they are. The Amended Complaint's allegations, bolstered by the record evidence, demonstrates Coreas and Molina hired Hernandez and Contreras, among other employees, trained and supervised them, and set their pay and work schedules. *E.g.*, Am. Compl. ¶¶ 45–50; Pl. 56.1 ¶¶ 67–69, 72–75, 77, 92–107, 110–114; Hernandez Decl. ¶¶ 32–36; Contreras Decl. ¶¶ 34–39; Muliere Tr. at 83:16–25; Tr. of Deposition of Angel Galvez at 13:10–14:8, 16:12–15; 18:9–20, 36:14–19; Tr. of Deposition of Irsan Reyes at 14:14–15:16. Accordingly, they are statutory employers "jointly and

severally liable" for Hernandez and Contreras's damages.  *See Fermin*, 93 F. Supp.
3d at 37 (citing cases).

## CONCLUSION

For the reasons discussed above, Hernandez's motions for summary judgment
and for default judgment are granted.  Bella Notte, Muliere, Coreas, and Molina are
jointly and severally liable to Hernandez for $32,935.87 in total damages, which is
comprised of:  (i) $10,086.31 in actual overtime damages; (ii) $10,000 in wage notice
and wage statement damages; (iii) $10,086.31 in liquidated damages; and (iv)
prejudgment interest in the amount of $2,763.25.

Contreras's motions for summary judgment and for default judgment are
granted.  Bella Notte, Muliere, Coreas and Molina are jointly and severally liable to
Contreras for $88,427.88 in total damages, which consists of:  (i) $34,098.19 in actual
minimum wage damages, for the FLSA and NYLL minimum wage violations; (ii)
$10,000 in wage notice and wage statement damages; (iii) $34,098.19 in liquidated
damages; and (iv) prejudgment interest in the amount of $10,231.50

The Clerk of Court is directed to enter judgment accordingly.  The Clerk of
Court shall mail a copy of this order to Molina.  Hernandez and Contreras may file a
motion for attorneys' fees and costs within 14 days after the entry of judgment.

**SO ORDERED.**

Dated: Central Islip, New York         _____/s/ (JMA)_____
      August 31, 2022                    Joan M. Azrack
                                         United States District Judge